### The Citizens Railway Company v. Isham Ford.

#### No. 825. Decided November 13, 1899.

1. **Street Crossings—Superior Right—Ordinance Construed.**

An ordinance giving preference to pedestrians at street crossings, making it the duty of "persons riding or driving" to check or halt if persons on foot be passing thereon, does not apply to street cars operated by electricity. (P. 113.)

2. **Same.**

By person "riding," in such ordinance, was meant one traveling upon a "horse or other animal," and by "driving," one "passing in a vehicle" under his own control. To justify application to motormen on street cars, the language, as ordinarily used, must point them out as the persons to be affected, with such certainty that they would so understand it. (P. 113.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from McLennan County.

*Clark & Bolinger,* for appellant.—A person riding or driving necessarily implies the use of horses, or cattle, and in common acceptation, whenever we use these terms "riding or driving," we necessarily imply that condition of affairs. We never say, for instance, that a motorman is riding or driving an electric street car, because strictly speaking he is doing neither. The propulsive force of an electric street car is furnished by the current of electricity acting directly on the motor, and we use entirely different terms when we refer to that mode of propulsion. The ordinance ought not to be given the broad construction given it by the court below unless its terms necessarily include the particular mode of transportation at issue. The ordinance is penal, and unless the terms employed by the lawmaking power must necessarily be given the force contended for and adopted by the court below, such enlarged construction should be rejected.

There is another provision in the ordinance which would seem to indicate that the views herein expressed and entertained by counsel for appellant are correct. This ordinance requires any person riding or driving, when they approach a crossing of a street or alley, if persons on foot be passing thereon, not to "obstruct or hinder" such foot passengers or pedestrians on any such crossings. To give the ordinance the

construction adopted by the court below we submit would be to reach an absurdity, and if carried to legitimate length on that line would practically abolish transportation by electricity in our cities. As said in the brief filed in the Court of Civil Appeals, "an electric street car is for the public use and transportation, and is often filled with numbers of passengers who for purposes of business or pleasure have taken that mode of rapid transportation. If it should be held that in the operation of such a car it must not obstruct or hinder a single foot passenger in crossing on a street or an alley, which crossing is encountered in the operation of such car, every one hundred and fifty feet, it would be almost impossible to accommodate the public. In other words, if the whim or pleasure of a single pedestrian who wishes to cross the street is to be indulged to the disadvantage and discomfort of a very much larger number of persons on an electric car, and if such pedestrian has a superior right to the car in the use of the streets, then the public convenience must be set aside for the benefit of an individual."

In support of the doctrine above contended for, we desire especially to call the attention of the court to the authority of Boothe on Street Railway Law, 408, section 303, in which the author states, after discussing the various decisions on this question: "That the rule is now well nigh universal that the street car has, and from the necessities of the case must have, a right of way on that portion of the street upon which alone it can travel, paramount to that of ordinary vehicles, and that the same rule applies to pedestrians." And in support of this proposition perhaps a hundred cases are cited in this work on pages 409 and 410, thoroughly establishing this proposition. Ehrisman v. Railway, 24 Atl. Rep., 596; Schwartz v. Railway, 30 La. Ann., 15.

*Eugene Easterling* and *J. W. Taylor,* for appellee.—The matter as contained in the city ordinance was relevant to the issue of contributory negligence made by appellant as to the relative rights of appellee's wife and appellant to the use of the street. Such ordinance of the city was relevant and showed the relative rights of pedestrians and persons driving street cars to the use of the street at the time and place of the injury, and no error was committed by the court in allowing it to remain in the pleadings and admitting it in evidence. San Antonio, etc., Railway v. Limburger, 88 Texas, 79; 23 Am. and Eng. Enc. of Law, 302, 303; Commissioners v. Rollins, 130 U. S., 662; United States v. Saunders, 89 U. S., 492; Railway v. Railway, 64 Texas, 80; Railway v. Carson, 66 Texas, 345.

The language of the city ordinance is plain. It requires no interpretation from the definitions of the words used in the ordinance given in Webster's dictionary, and they admit of no doubt as to their meaning. Hence there is no room for construction. As said in People v. Greene County, 13 Abb. N. Cas., 424: "Any attempted construction of the act which departs from its language, and purporting to be based on the intention of the Legislature, in the absence of any key to the meaning

of the words afforded by other parts of the act, is mere speculation and must necessarily vary with the convictions of the reasoner as to what the law should have been." Mr. Justice Story, in Gardner v. Collins, 2 Pet. (U. S.), 93, says: "What the legislative intent was, can be derived only from the words they used, and we can not speculate beyond the reasonable import of these words. The spirit of the act must be gathered from the words of the act and not from conjecture aliunde."

BROWN, Associate Justice.—The Court of Civil Appeals for the Third Supreme Judicial District has certified to this court the following statement and questions:

"Appellee, as plaintiff, sued appellant, as defendant, for damages for personal injuries, and recovered a judgment from which the defendant has appealed. According to the averments in the plaintiff's petition, the defendant is engaged in the business of running and operating street cars by electricity for the conveyance of passengers in the city of Waco.

"The injuries complained of were inflicted upon the plaintiff's wife, Mattie Ford. The testimony shows that while crossing Fourth Street, in the city of Waco, the plaintiff's wife was struck by a street car owned and operated by the defendant. She was knocked down and seriously injured.

"The plaintiff's petition charges the defendant with negligence in general terms and also with running the car with which she collided at a rapid and unlawful rate of speed, failure to ring the bell or give any other warning of the approach of the car. The plaintiff also pleaded article 299, chapter 33, of the city ordinances of the city of Waco, entitled 'Streets, alleys, and sidewalks,' which article is as follows:

" 'Streets, Alleys, and Sidewalks.—On all crossings over the streets and alleys of this city from one pavement or sidewalk to another, preference shall be given to pedestrians, and it shall be the duty of any person riding or driving on any of said streets or alleys to check up or even halt, if necessary, when they approach such crossing, if persons on foot be passing thereon, so as not to obstruct, hinder, or endanger such foot passengers or pedestrians on any such crossing.'

"The defendant specially excepted to so much of the plaintiff's petition as set up this ordinance, upon the ground that it was not applicable to street cars. The District Court overruled this exception, and, over the same objection, admitted the ordinance in evidence, and instructed the jury that under the ordinance referred to, pedestrians have a superior right to the use of the crossings of streets. This charge and the ruling aforesaid are assigned as error by appellant. The date of the ordinance and time of construction of the street railway are not alleged or proved.

"With the foregoing statement and explanation, the Court of Civil Appeals, acting through its Chief Justice, certifies to the Supreme Court for decision the questions thus presented in this court, viz: Does the city ordinance referred to have application to this case, and did the

trial court, in the matter above stated, rule and charge correctly? In other words, stating the question abstractly, does the ordinance referred to apply to street cars operated by electricity and require them 'to check up or halt, if necessary, when they approach such crossings, if persons on foot be passing,' etc?"

The words, "riding" and "driving" are of common use and must be taken and construed according to their ordinary signification. Suth. on Stat. Cons., sec. 229. The use of the words in the disjunctive form shows that it was intended to designate by each a different act; "person riding" must travel in a manner different from the "person driving." Each person must be in control of the means by which he is moving, because the ordinance requires him "to check up" or "halt," which could not apply to one riding in a vehicle under the control and management of another.

Webster defines the words "ride" and "drive" as follows: "Ride." (1) "To be carried on a horse or other animal or in any kind of vehicle or carriage." (2) "To be carried or travel on horseback." "Drive. To go or pass in a carriage." It will be seen that "ride" in its broadest meaning includes "drive," but, as used in the ordinance before us, it is evident that this was not intended, because each class of persons must do one of two things different in their character, and, when taken in connection with the context, it is apparent that the words were used in their more limited sense; that is, the phrase "any person riding" was intended to designate one traveling upon "a horse or other animal," while "any person driving" points out one "passing in a vehicle" under his own control.

The rule of construction is to ascertain the intent of the lawmaker, and, applying this rule to the language used, we think the motorman of a street car was not intended to be included in the phrase "any person driving." To justify the application of the ordinance to street cars, it is not sufficient that the words might be construed so as to embrace motormen on street cars, but the language, as ordinarily used, must point them out as persons to be affected with such certainty that, upon reading it, they would understand obedience to its mandates to be required of them.

We answer the question, that street cars are not embraced in the terms of the ordinance submitted.